IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Action No.   15-cv-01593-LTB-MJW

CHRISTOPHER B. RICKETTS, as an individual, and as the spouse of CAROL A. RICKETTS, deceased,

        Plaintiff,

v.

MANUEL VALLES-CHAVEZ (a/k/a MANUEL VALLES), an individual, and
EMPIRE DAIRY, LLC, a Colorado limited liability company,

        Defendants.
_____

**MEMORANDUM OPINION AND ORDER**
_____

**Babcock, J.**

Plaintiff Christopher B. Ricketts alleges that he was injured and that his wife, Carol A. Ricketts, died when the Rickettses' minivan collided with a runaway horse owned by Defendant Manuel Valles-Chavez. Mr. Ricketts brings negligence claims against not only Mr. Valles-Chavez but also his landlord, Defendant Empire Dairy, LLC ("Empire"). Now before the Court is Empire's Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) [Doc. # 5]. I have reviewed the motion, Mr. Valles-Chavez's response [Doc. # 9], and Empire's reply [Doc. # 10]. I have determined that oral argument would not materially assist me in deciding the motion. The Court has jurisdiction under 28 U.S.C. § 1332. As I explain below, I agree that Mr. Ricketts' theory of negligence with respect to Empire is not viable and **GRANT** Empire's motion.

**I. Background**

The facts in this section are as alleged in the complaint. On the evening of August 4,

2013, Mr. Ricketts, a Michigan resident at all relevant times, was driving the Rickettses' minivan along Interstate 76 in Wiggins, Colorado; Mrs. Ricketts was in the front passenger seat. Compl. ¶¶ 3, 11, 20-22 [Doc. # 1]. That same evening, Mr. Valles-Chavez, a Colorado resident, was riding his horse in a ditch running along I-76. *Id.* ¶¶ 4, 20. He was close to the Wiggins Fire Department when the horse bucked him onto the ground and ran off. *Id.* ¶ 21. At about 9:28 p.m., Mr. Ricketts encountered the horse in the middle of the I-76 roadway. *Id.* ¶ 23. Despite traveling under the posted speed limit, Mr. Ricketts did not have time to avoid the horse and crashed the minivan into it. *Id.* Mrs. Ricketts died in the accident and Mr. Ricketts was injured. *Id.* ¶¶ 25, 38. At the time of the accident, Mr. Valles-Chavez lived and kept his horse on property owned by Empire—a Colorado limited liability company—at 17029 Road 1 in Wiggins ("the property"). *Id.* ¶¶ 12, 15-16. Mr. Ricketts alleges that Mr. Valles-Chavez was found to have a blood alcohol content of .075 percent following the accident. *Id.* ¶ 29.

## II. Standard of Review

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The plausibility requirement serves to "weed out claims that do not (in the absence of additional

allegations) have a reasonable prospect of success." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008). The requirement also helps to "avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (citation omitted).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations, citation, and brackets omitted). In deciding such a motion, the court assumes that the plaintiff's well-pleaded factual allegations are true and views them in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 679; *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012). By contrast, the court does not accept legal conclusions as true. *Khalik v. United Airlines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 677). "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik*, 671 F.3d at 1191.

### III. Analysis

The Court's jurisdiction in this case is based on diversity of citizenship, so I look to the law of the forum state, Colorado, to determine the elements of Mr. Ricketts' negligence claim. *Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir. 1995). To make out a negligence claim under Colorado law, a plaintiff must show: "(1) the existence of a legal duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff was injured; and (4) the defendant's breach of duty caused the injury." *Raleigh v. Performance Plumbing & Heating*, 130 P.3d 1011, 1015

(Colo. 2006). At issue here is the first element: Did Empire owe a legal duty to the Rickettses? This question is one for the Court. *HealthONE v. Rodriguez ex rel. Rodriguez*, 50 P.3d 879, 888 (Colo. 2002). "In determining whether a duty should be recognized, a court must consider many factors, including: (1) the risk involved, (2) the foreseeability and likelihood of injury as weighed against the social utility of the actor's conduct, (3) the magnitude of the burden guarding against injury or harm, and (4) the consequences of placing the burden upon the actor." *Id.*

I begin by reviewing Mr. Ricketts' allegations. He alleges that, because the property was "so close" to I-76, "it was reasonably foreseeable to [Empire] that the horse would run onto I-76 and cause an accident if [Empire] failed to control the horse within the confines of the property." Compl. ¶ 31 [Doc. # 1]. Mr. Ricketts alleges that Empire knew that Mr. Valles-Chavez kept a horse on the property; that he was not capable of controlling the horse; that he "had prior alcohol related incidents"; and that he had a suspended driver's license and "was using a horse as a means of transportation." *Id.* ¶¶ 16-19. He contends that "Empire Dairy's tortious conduct was having knowledge of [these] facts . . . that together created a dangerous condition and doing nothing to protect third parties from that danger." Resp. at 10 [Doc. # 9]. Thus, Mr. Ricketts' position is that, because Empire had reason to believe that Mr. Valles-Chavez was unable to properly control his horse, Empire owed a duty to third parties to ensure that Mr. Valles-Chavez did not take the horse off the property.

I disagree. "Generally, there is no duty to control the conduct of a third person so as to prevent him or her from causing physical harm to another unless a special relationship exists between the actor . . . and the third person, which imposes a duty upon the actor to control the

4

third person's conduct." *Molosz v. Hohertz*, 957 P.2d 1049, 1051 (Colo. App. 1998) (citing *Perreira v. State*, 768 P.2d 1198 (Colo. 1989)); *accord Castaldo v. Stone*, 192 F. Supp. 2d 1124, 1142 (D. Colo. 2001). "Such special relationships include the landlord/tenant relationship, but only to the extent that the landlord has the ability to control the tenant and knows or should know of the necessity and opportunity for exercising such control." *Molosz*, 957 P.2d at 1051. In *Molosz*, the court addressed an action for "negligent retention of a violent tenant" against landlords who rented a home to a tenant "with knowledge of his mental instability and prior violent behavior." 957 P.2d at 1050. The tenant fired gunshots through the windows of the neighboring home, allegedly causing the occupants to sustain emotional injuries and property damage. *Id.* The neighbors sued and the court, applying the factors noted above, concluded that the landlords owed them no duty. The court emphasized that the proposed duty was one "of potentially unlimited magnitude" because the landlords "would be required to warn almost all people with whom the tenant could potentially [come in] contact, especially at or near the leased premises." *Id.* at 1051. The landlords, therefore, "could not reasonably predict when the tenant might be violent, nor did they have the power to place or keep him in a lock-up situation to prevent harm to others." *Id.* Accordingly, "the defendants, as lessees, did not have a special relationship with the tenant such as to be able to control his conduct concerning third parties." *Id.*

Consistent with *Molosz*, I conclude that Empire did not owe a duty to the Rickettses to control Mr. Valles-Chavez's use of his horse. There is nothing in the complaint to suggest, for example, that Empire had the power to keep Mr. Valles-Chavez or his horse "in a lock-up situation to prevent harm to others." *Id.* To the contrary, the complaint suggests nothing other

than a traditional landlord-tenant relationship, pursuant to which "a tenant is entitled to the possession of the leased premises to the exclusion of the landlord" absent an agreement to the contrary. *See Perez v. Grovert*, 962 P.2d 996, 998 (Colo. App. 1998) (citation omitted). Accordingly, I cannot conclude that the requisite special relationship required to impose a duty on Empire existed. While Mr. Ricketts notes in his response brief that Mr. Valles-Chavez was also Empire's employee at the time of the accident, he has not sought leave to amend his complaint to make this allegation. In any event, there is no indication that any such employment relationship gave Empire the right to control Mr. Valles-Chavez's use of his horse.

Like the court in *Molosz*, I emphasize that the burden Mr. Ricketts would have me recognize is "of potentially unlimited magnitude." 957 P.2d at 1051. Under Mr. Ricketts' theory, landlords like Empire would have a duty to protect third parties from the potentially dangerous conduct of their tenants, even if it occurs off the premises. Would the landlord of an apartment complex that provides parking spaces to its tenants owe a duty to protect motorists outside the premises from a tenant with a poor driving record? Such a duty could require landlords to monitor tenants' driving records and prevent certain tenants from accessing their vehicles. Among other consequences, imposing such responsibilities on landlords could substantially increase the cost and availability of property insurance, contrary to the public policy of Colorado. *See, e.g.,* Colo. Rev. Stat. § 13-21-115(1.5)(d) (provision of Colorado Premises Liability Act noting General Assembly's intention of "creat[ing] a legal climate which will promote private property rights and commercial enterprise and will foster the availability and affordability of insurance").

Courts in other jurisdictions have likewise refused to impose on landlords a duty to

protect third parties from a tenant's conduct in the absence of an ability to control the tenant. *See, e.g., Spencer v. Nesto,* 764 A.2d 224, 231 (Conn. Super. Ct. 2000) (noting that the "defendant landlord may not be held legally responsible for the acts of his tenants, even dangerous tenants, when he has no control over his tenants' acts"); *see also Feister v. Bosack*, 497 N.W.2d 522, 523 (Mich. App. 1993) (holding that "landlord has no duty to protect third parties from injuries inflicted by a tenant's pet that occur away from the leased premises" where "landlord had no ability to control the tenants and their dog"); *Solorio v. Rodriguez*, 987 N.E.2d 452, 459 (Ill. App. 2013) (noting that, "generally, landlords are not responsible for injuries caused by a tenant's dog away from the leased premises" and that "we are unwilling to make a landlord an insurer of the public against injuries caused away from the premises").

      Mr. Ricketts cites cases recognizing a landlord's duty to prevent "physical harm caused by a dangerous condition on his land even though he retains no control over the land." *See Gonzales ex rel. Gonzales v. Bierman*, 773 P.2d 629, 630 (Colo. App. 1989) (adopting Section 379A of the Restatement (Second) of Torts on this issue and holding that landlord could be held liable for injuries caused by horse that escaped from land where landlord "knew that [the tenant] kept horses on the land and knew or had reason to know that the fences on the land were in poor condition"); *Vigil v. Payne*, 725 P.2d 1155, 1156 (Colo. App. 1986) (landlord could be held liable for injuries resulting from attack by tenant's "vicious dogs" that occurred "on the rented premises"); *Salazar v. Webb*, 618 P.2d 706, 707 (Colo. App. 1980) (landlord could be held liable for injuries from "explosion in a storm sewer beneath" leased property caused by methane gas leaking from landfill on property). But the facts in the complaint do not fall within this line of cases because Mr. Ricketts has not alleged any relevant dangerous condition *on the land*. To the

contrary, the complaint states that Mr. Valles-Chavez was bucked from the horse only after he had taken it off the property. The complaint alleges that this happened near the Wiggins Fire Department, which is undisputedly about 2.5 miles from the property. *See* Compl. ¶¶ 20-21 [Doc. # 1]; Ex. A to Mot. to Dismiss [Doc. # 5-1]. Thus, it is clear that the accident had nothing to do with conditions on the property, in contrast with the poor fencing in *Gonzales*, the vicious dogs in *Vigil*, and the methane gas leak in *Salazar*. The cited cases are, therefore, inapplicable.

## IV.  Conclusion

Mr. Ricketts has not adequately alleged that Empire owed him and Mrs. Ricketts a legal duty. His negligence claim against Empire therefore fails. *See Molosz*, 957 P.2d at 1051 ("When there is no duty, there can be no actionable negligence."). Accordingly, I **GRANT** Empire's Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) [Doc. # 5] and **DISMISS WITH PREJUDICE** Mr. Ricketts' claim against Empire. Empire shall have its costs.

DATED: February   26  , 2016.

                                                BY THE COURT:

                                                  s/Lewis T. Babcock
                                                LEWIS T. BABCOCK, JUDGE